UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARGERY NEWMAN, and all others similarly situated

      Plaintiff,

      v.

METROPOLITAN LIFE INSURANCE COMPANY,

      Defendant.

Court No. 1:16-cv-03530

**FIRST AMENDED COMPLAINT AT LAW**

Plaintiff, Margery Newman ("Plaintiff"), by and through her attorneys, DUNCAN LAW GROUP, LLC, CRONIN & CO., LTD., and TOMLINSON LAW, LLC, complaining of the Defendant, METROPOLITAN LIFE INSURANCE COMPANY (hereinafter "MetLife"), for her Complaint at Law, pleading in the alternative, on behalf of herself and all others similarly situated, states:

**Nature of the Action**

1. Since 1986, MetLife has been in the business of marketing, pricing and selling individual long-term care insurance policies.

2. MetLife knew and understood that people purchase long-term care insurance for many reasons, including wanting to avoid exhausting assets for long-term care, to exercise choices regarding the type of care received, to protect family members from having to pay for care, and to decrease the chances of going on Medicaid.

1

3. MetLife further knew and understood that many people seeking long-term care insurance coverage either were on or were going to be on fixed incomes and of limited financial means.

4. MetLife perpetrated a fraud by marketing and offering multiple incentives—including premium payment options—to those applying for long-term care insurance. The incentives were intended to alleviate applicants'/policyholders' concerns regarding future premium increases.

5. One such incentive was the "Reduced-Pay at 65 Option." In a "Long-Term Care ("LTC") Facts" brochure (a copy of which is attached as "Exhibit A") used to market long-term care insurance to prospective buyers, MetLife described the "Reduced-Pay at 65 Option" as follows:

> Premium Payment Options[:] You can choose how you want to pay for your Policy. In addition to standard premium payment methods, we offer 4 premium payment options which help you pay off your policy sooner and/or ease financial obligations down the road, when you might be on a fixed income.
> …
> **Reduced Pay at 65 Option:** By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, you pay half the amount of your pre-age 65 premiums **thereafter**.

Exhibit A at 9 (emphasis added).

6. MetLife intended that potential long-term care insurance purchasers rely on the statements and representations contained in the "Long-Term Care ("LTC") Facts" brochure, which MetLife produced, published and distributed.

7. Long-term care insurance purchasers, including Plaintiff, relied on the statements and representations made in MetLife's "Long-Term Care ("LTC") Facts" brochure (as well as statements and representations made in other marketing materials MetLife produced, published and distributed).

8. The "Reduced-Pay at 65 Option" promised and guaranteed purchasers, including Plaintiff, that in exchange for paying increased premiums before reaching the age of 65 they would pay post-age 65 premiums fixed at 50% of their pre-age 65 premium amount.

9. MetLife further intended that potential long-term care insurance purchasers believe that by purchasing the "Reduced Pay at 65 Option" they were modifying the terms and conditions of the policy and permanently fixing post-age 65 premiums at 50% of the pre-age 65 premiums.

10. Long-term care insurance purchasers, including Plaintiff, believed that by purchasing the "Reduced Pay at 65 Option" they were modifying the terms and conditions of the policy and permanently fixing post-age 65 premiums at 50% of the pre-age 65 premiums.

## Jurisdiction and Venue

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than defendants, there are more than 100 members of the Class, and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

12. Venue is appropriate because Plaintiff is a resident of the State of Illinois. Venue is also proper in this Court because Defendant systematically transacts business in the State of Illinois and the causes of action set forth in this Complaint, in part, arose in the State of Illinois. MetLife sold Plaintiff an individual long-term care insurance policy in the State of Illinois.

## The Parties

13. At all times mentioned herein, Plaintiff resided at 1930 Strenger Lane, Riverwoods, Illinois, 60015, and is the owner of a MetLife "LTC PREMIER" long-term care insurance policy number 04856-20065 ("MetLife Policy 04856-20065"). A copy of MetLife Policy 04856-20065 is attached hereto as "Exhibit B."[1]

14. At all times mentioned herein Defendant, MetLife, was a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York. MetLife, therefore, is a citizen of New York. MetLife is licensed to do business in the State of Illinois and regularly conducts business in Illinois.

### Factual Allegations

15. Plaintiff was 56 years old at the time she applied for and purchased MetLife Policy 04856-20065, with an effective date of coverage of September 1, 2004.

16. When Plaintiff purchased MetLife Policy 04856-20065, Plaintiff selected the "Reduced-Pay at 65 Option."

17. MetLife described the "Reduced-Pay at 65 Option" in the following manner:

> By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, **you pay half the amount of your pre-age 65 premiums thereafter.**

Exhibit A at 9 (emphasis added).

18. The only information MetLife provided to Plaintiff and other policy holders regarding the terms and conditions of the "Reduced Pay at 65 Option" was contained within marketing and promotional materials similar to and including the Long-Term Care ("LTC") Facts" brochure (a copy of which is attached as "Exhibit A").

---

[1] On Wednesday, June 22, 2016, counsel for MetLife produced a copy of MetLife Policy 04856-20065, representing that it was the policy as it existed in 2004. The aforementioned policy is attached hereto as "Exhibit B".

4

19. MetLife Policy 04856-20065 shows that Plaintiff selected the "Reduced-Pay at 65 Option." Exhibit B, "Schedule of Benefits." MetLife Policy 04856-20065 reflects that Plaintiff's premiums would be cut in half once she turned 65 years old. Exhibit B "Schedule of Benefits." MetLife Policy 04856-20065 contains no other statements regarding the "Reduced-Pay at 65 Option."

20. When Plaintiff purchased MetLife Policy 04856-20065, Plaintiff's "Total Annual Premium with discounts applied" was $5,010.74, and her "Semi-Annual Premium Amount" was $2,505.37. Exhibit B, "Schedule of Benefits."

21. Between when MetLife Policy 04856-20065 was first issued and the Policy Anniversary on or after Plaintiff's 65th Birthday, Plaintiff paid an additional annual premium of $1,453.12 in exchange for the benefit of the "Reduced-Pay at 65 Option."

22. Immediately before Plaintiff turned 65 years old on May 14, 2012, her semi-annual premium for MetLife Policy 04856-20065 was $3,813.68.

23. Because Plaintiff selected the "Reduced-Pay at 65 Option," Plaintiff's semi-annual premium was reduced from $3,813.68 to $1,906.84 on September 1, 2012. (A copy of the Schedule of Benefits effective September 1, 2012 is attached hereto as "Exhibit C")

24. On March 1, 2015, MetLife increased Plaintiff's semi-annual premium 102% to $3,851.81—$38.13 more than Plaintiff's pre-age 65 semi-annual premiums. (A copy of the Schedule of Benefits effective September 1, 2015 is attached hereto as "Exhibit D")

25. Plaintiff now pays $3,851.81 in semi-annual premiums, which is $1,944.97 more than the $1,906.84 semi-annual premium she was promised in exchange for purchasing the "Reduced-Pay at 65 Option." Plaintiff's annual premium is $3,889.94 more than what she was promised in exchange for purchasing the "Reduced-Pay at 65 Option."

5

26. Based on the terms and conditions of the "Reduced Pay at 65 Option", Plaintiff's annual premium should have remained permanently fixed at 50% of her pre-age 65 premium.

### Class Allegations

27. Plaintiff brings this action on behalf of herself, and all others similarly situated, pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons age 65 and older in the United States who purchased an individual long-term care insurance policy from MetLife (or a subsidiary or affiliate thereof) and selected the "Reduced-Pay at 65 Option" at any time during the period from January 1, 1986 to the present and have been subjected to a class-wide rate increase that increased their premiums above and beyond the promised 50% of their pre-age 65 premiums.

28. The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the United States. While only MetLife knows the exact number of class members, Plaintiff believes there are thousands of members in the Class based, in part, on the fact that MetLife has sold approximately 600,000 long term care insurance policies.

29. Plaintiff's claims are typical of the claims of the other members of the Class she seeks to represent because Plaintiff and all class members purchased an individual long-term care insurance policy from MetLife and purchased the "Reduced-Pay at 65 Option."

30. Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class.

31. The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

33. The interest of the members of the class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and/or formulaic, and the expense and burden of individual litigation might make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

### **COUNT I – Breach of Contract ("Reduced-Pay at 65 Option")**

34. Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 as if fully set forth herein.

35. Plaintiff brings this count on behalf of the Class.

36. By purchasing MetLife Policy 04856-20065, Plaintiff entered into a contract with MetLife.

37. By selecting the "Reduced-Pay at 65 Option," Plaintiff modified the terms and conditions of MetLife Policy 04856-20065, permanently fixing post-age 65 premiums at 50% of her pre-age 65 premiums.

38. Under the specific terms of the "Reduced-Pay at 65 Option", Plaintiff agreed to pay more than the regular premium amount she would have otherwise paid each year up to September 1, 2012. In exchange, MetLife promised that Plaintiff would "pay half the amount of [her] pre-age 65 premiums thereafter" starting September 1, 2012. (See Exhibit A.)

39. MetLife breached its contract with Plaintiff by increasing Plaintiff's annual premiums 102% (to an amount greater than Plaintiff's pre-age 65 annual premiums) in March 2015, when Plaintiff was 67 years old.

40. As a result of MetLife's breach, Plaintiff was forced to pay an additional $3,889.94 in increased annual premiums. Therefore, Plaintiff has been damaged and continues to incur damages.

### COUNT II – Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Reduced-Pay at 65 Option")

41. Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 as if fully set forth herein.

42. Plaintiff brings this count on behalf of the Class.

43. MetLife violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §501/1 *et seq.* ("ICFA"), and other similar state consumer fraud acts, in one or more of the following respects:

**Deceptive Acts or Practices**

44. When marketing the "Reduced-Pay at 65 Option," MetLife represented to Plaintiff that if Plaintiff paid more than the regular premium amount Plaintiff would otherwise pay each year up to the Policy Anniversary on or after Plaintiff's 65th birthday, Plaintiff would "**pay half the amount of [Plaintiff's] pre-age 65 premiums thereafter**." Exhibit A at 9 (emphasis added).

8

45. The foregoing representation was deceptive because MetLife knew it could only and would only increase premiums on a class-wide basis.

46. MetLife did not define the "class" for Plaintiff and other purchasers of long term care insurance.

47. Unbeknownst to Plaintiff and other purchasers of the "Reduced Pay at 65 Option" the "class" subjected to future, "class-wide" premium increases was broadly defined to include policies both with and without the "Reduced Pay at 65 Option."

48. Thus, if MetLife had to increase premiums after Plaintiff turned 65 years old, MetLife would be unable to deliver on the "Reduced-Pay at 65 Option's" promise to "**pay half the amount of [Plaintiff's] pre-age 65 premiums <u>thereafter</u>**." Exhibit A at 9 (emphasis added).

49. MetLife intended that Plaintiff rely on the foregoing deceptive statement when deciding to purchase an individual long-term care insurance policy and/or the "Reduced-Pay at 65 Option."

50. MetLife made the foregoing deceptive statement in the conduct of trade or commerce—namely the sale of individual long-term care insurance policies and/or the "Reduced-Pay at 65 Option."

51. MetLife intended that the statements and representations made in the marketing materials it produced, published and distributed related to Long Term Care Insurance be relied upon by purchasers of MetLife's policies, riders and payment options.

52. Plaintiff relied on the foregoing deceptive statement when deciding to purchase the "Reduced-Pay at 65 Option."

9

53. Plaintiff would not have purchased the "Reduced-Pay at 65 Option" and/or MetLife Policy 04856-20065 had she known the payment option did not permanently fix her premiums after she turned 65 years old.

54. As a direct and proximate result of the foregoing deceptive statement, Plaintiff has incurred damages, and will continue to incur damages, in the form of additional premiums paid in excess of the promised post-age 65 premium.

**Unfair Acts or Practices**

55. MetLife's misrepresentations regarding the benefits provided by the "Reduced-Pay at 65 Option" violated Illinois public policy—including standards of conduct set out in Ill. Admin. Code tit. 50, § 2012.122(b)(4), as well as Illinois common law doctrines governing insurance policies and breach of contract.

56. MetLife's misrepresentations regarding the benefits provided by the "Reduced-Pay at 65 Option" were "immoral, unethical, oppressive, or unscrupulous" because it forced Plaintiff to do one of the following: (1) pay a premium more than two times greater than the premium Plaintiff originally agreed to pay; (2) reduce the coverage for which she had previously contracted; (3) or cancel her coverage altogether.

57. If Plaintiff canceled her coverage, she would not have been able to obtain individual long-term care insurance from another insurer at the price MetLife charged. Thus, to maintain the long-term care insurance coverage MetLife promised her, Plaintiff had no choice but to pay the increased premiums starting March 1, 2015.

58. Plaintiff suffered substantial injury because she was forced to pay a premium more than two times greater than the premium Plaintiff initially agreed to pay.

10

**COUNT III – Fraud ("Reduced-Pay at 65 Option")**

59. Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 as if fully set forth herein.

60. Plaintiff brings this count on behalf of the Class.

61. The "Reduced-Pay at 65 Option" stated the following:

**Reduced Pay at 65 Option:** By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, you pay half the amount of your pre-age 65 premiums **thereafter**.

Exhibit A at 9 (emphasis added).

62. The language MetLife used to market the "Reduced Pay at 65 Option" promised or guaranteed a post-65 premium that was locked-in at 50% of the pre-65 premium.

63. At the time it offered and sold Plaintiff the "Reduced Pay at 65 Option" MetLife knew that if a class-wide premium increase was implemented after Plaintiff turned 65 years old, it would be unable to fulfill its promise to lock-in Plaintiff's premium to 50% of her pre-65 premium, making "you pay half the amount of your pre-age 65 premiums thereafter" a false statement of material fact.

64. MetLife intended that Plaintiff rely on the foregoing misrepresentation when deciding to purchase MetLife Policy 04856-20065 and/or the "Reduced-Pay at 65 Option."

65. Plaintiff relied on the foregoing misrepresentation and/or omission when deciding to purchase MetLife Policy 04856-20065 and/or the "Reduced-Pay at 65 Option."

66. Plaintiff would not have purchased the "Reduced-Pay at 65 Option" had she known her policy premiums were subject to increase after she turned 65.

67. As a direct result of the foregoing misrepresentation and/or omission, Plaintiff suffered damages in the form of premiums in excess of 50% of her pre-65 premiums.

11

**COUNT IV – Fraudulent Concealment ("Reduced-Pay at 65 Option")**

68. Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 as if fully set forth herein.

69. Plaintiff brings this count on behalf of the Class.

70. The "Reduced-Pay at 65 Option" stated the following:

**Reduced Pay at 65 Option:** By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, you pay half the amount of your pre-age 65 premiums **thereafter**.

Exhibit A at 9 (emphasis added)**.**

71. Thus MetLife affirmatively represented to Plaintiff that her pre-age 65 premiums would be cut in half after Plaintiff turned 65 years old.

72. At the time it offered and sold Plaintiff the "Reduced Pay at 65 Option," MetLife knew that if a class-wide premium increase was implemented after Plaintiff turned 65 years old, it would be unable to fulfill its promise to lock-in Plaintiff's premium to 50% of her pre-65 premium.

73. MetLife's failure to disclose that if a class-wide premium increase was implemented after Plaintiff turned 65 years old, MetLife would be unable to fulfill its promise to lock-in Plaintiff's premium to 50% of her pre-65 premium constituted a fraudulent omission.

74. By omitting the aforementioned information, MetLife intended to induce a false belief in Plaintiff that Plaintiff's premiums would be permanently cut in half once Plaintiff turned 65 years old.

75. MetLife failed to define "class" as it relates to a class-wide premium increase in MetLife Policy 04856-20065.

76. Furthermore, Illinois law offers no standard definitions of "class" as it relates to a class-wide premium increase.

77. Thus, Plaintiff could not have discovered that she was potentially subject to premium increases once she turned 65 years old through reasonable inquiry or inspection.

78. Plaintiff would not have purchased the "Reduced-Pay at 65 Option" had she known her policy premiums were subject to increase after she turned 65.

79. As a direct result of the foregoing misrepresentation and/or omission, Plaintiff suffered damages in the form of premiums in excess of 50% of her pre-65 premiums.

### **Request for Relief**

WHEREFORE, Plaintiff demands the following relief on behalf of herself and all others similarly situated:

A. That an Order be entered certifying this action as a Plaintiff Class action under Federal Rule of Civil Procedure 23;

B. Compensatory damages in such amount as demonstrated by the proofs at trial and that the Court deems just and proper;

C. Punitive damages as to Counts for which such damages are available under applicable law and in an amount that the Court deems just and proper;

D. Imposition of a constructive trust, an order granting recessionary and injunctive relief and other such equitable relief that the Court deems just and proper;

E. An appropriate claims resolution facility, funded by Defendant, to administer relief to the Class in this case;

F. All statutory damages including all exemplary damages available under any applicable statutory provision;

G. Costs of litigation and attorneys' fees; and

H. All other appropriate relief.

Dated: June 29, 2016

                                                Respectfully submitted,

                                                **MARGERY NEWMAN,**
                                                **and all others similarly situated,**

                                                By: */s/ Robert R. Duncan*
                                                          One of her Attorneys

| Robert R. Duncan | Thomas C. Cronin | Frank H. Tomlinson |
|---|---|---|
| DUNCAN LAW GROUP, LLC | CRONIN & CO., LTD. | TOMLINSON LAW, LLC |
| 161 North Clark Street | 161 North Clark Street | 2100 First Avenue North |
| Suite 2550 | Suite 2550 | Suite 600 |
| Chicago, IL 60601 | Chicago, Illinois 60601 | Birmingham, Alabama |
| T: 312.202.3283 | T: 312.201.7100 | T: 205.328.9445 |
| F: 312.202.3284 | F: 312.201.7101 | F: 800.856.9028 |