## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARGERY NEWMAN, and all others similarly situated<br><br>        Plaintiff,<br><br>                          v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>        Defendant. | Case No. 1:16-cv-03530 |

### DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S
### ANSWER AND AFFIRMATIVE DEFENSES

Defendant Metropolitan Life Insurance Company ("MetLife"), hereby responds to the like-numbered paragraphs set forth in the First Amended Complaint of Plaintiff, Margery Newman ("Plaintiff") as follows:

### Nature of the Action[1]

1.       Since 1986, MetLife has been in the business of marketing, pricing and selling individual long-term care insurance policies.

**ANSWER:**  MetLife admits that it marketed and sold individual long-term care insurance from 1997 through 2011.  Except as expressly admitted herein, paragraph 1 of the First Amended Complaint is denied.

2.       MetLife knew and understood that people purchase long-term care insurance for many reasons, including wanting to avoid exhausting assets for long-term care, to exercise choices regarding the type of care received, to protect family members from having to pay for care, and to decrease the chances of going on Medicaid.

---

[1]       The headings in the First Amended Complaint are repeated here for convenience.  MetLife denies any and all factual allegations that may be included in or implied by the headings.

**ANSWER:** MetLife admits that the individuals who have purchased long-term care insurance products from MetLife did so for one or more reasons. Except as expressly admitted herein, paragraph 2 of the First Amended Complaint is denied.

3. MetLife further knew and understood that many people seeking long-term care insurance coverage either were on or were going to be on fixed incomes and of limited financial means.

**ANSWER:** Denied.

4. MetLife perpetrated a fraud by marketing and offering multiple incentives— including premium payment options—to those applying for long-term care insurance. The incentives were intended to alleviate applicants'/policyholders' concerns regarding future premium increases.

**ANSWER:** Denied.

5. One such incentive was the "Reduced-Pay at 65 Option." In a "Long-Term Care ("LTC") Facts" brochure (a copy of which is attached as "Exhibit A") used to market long-term care insurance to prospective buyers, MetLife described the "Reduced-Pay at 65 Option" as follows:

> Premium Payment Options[:] You can choose how you want to pay for your Policy. In addition to standard premium payment methods, we offer 4 premium payment options which help you pay off your policy sooner and/or ease financial obligations down the road, when you might be on a fixed income.
> **…**
> **Reduced Pay at 65 Option:** By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, you pay half the amount of your pre-age 65 premiums **thereafter**.

Exhibit A at 9 (emphasis added).

**ANSWER:** MetLife admits that the brochure attached as Exhibit A to the First Amended Complaint is a copy of a portion of a marketing brochure created by MetLife. MetLife admits that the brochure was provided by insurance producers to some but not all prospective insureds between September 2003 and April 2005. MetLife admits that paragraph 5 of the First Amended Complaint accurately quotes a portion of the brochure attached to the First Amended

2

Complaint as Exhibit A, which is a document that speaks for itself. Except as expressly

admitted herein, paragraph 5 of the First Amended Complaint is denied.

6.    MetLife intended that potential long-term care insurance purchasers rely on the statements and representations contained in the "Long-Term Care ("LTC") Facts" brochure, which MetLife produced, published and distributed.

**ANSWER:** MetLife admits that the brochure attached as Exhibit A to the First Amended

Complaint is a copy of a portion of a marketing brochure created by MetLife. MetLife admits

that the brochure was provided by insurance producers to some but not all prospective insureds

between September 2003 and April 2005. Except as expressly admitted herein, paragraph 6 of

the First Amended Complaint is denied.

7.    Long-term care insurance purchasers, including Plaintiff, relied on the statements and representations made in MetLife's "Long-Term Care ("LTC") Facts" brochure (as well as statements and representations made in other marketing materials MetLife produced, published and distributed).

**ANSWER:** MetLife is without information sufficient to form a belief as to the allegations in

paragraph 7 of the First Amended Complaint and, therefore, all such allegations are denied.

8.    The "Reduced-Pay at 65 Option" promised and guaranteed purchasers, including Plaintiff, that in exchange for paying increased premiums before reaching the age of 65 they would pay post-age 65 premiums fixed at 50% of their pre-age 65 premium amount.

**ANSWER:** Denied.

9.    MetLife further intended that potential long-term care insurance purchasers believe that by purchasing the "Reduced Pay at 65 Option" they were modifying the terms and conditions of the policy and permanently fixing post-age 65 premiums at 50% of the pre-age 65 premiums.

**ANSWER:** Denied.

10.    Long-term care insurance purchasers, including Plaintiff, believed that by purchasing the "Reduced Pay at 65 Option" they were modifying the terms and conditions of the policy and permanently fixing post-age 65 premiums at 50% of the pre-age 65 premiums.

**ANSWER:** Denied.

### Jurisdiction and Venue

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than defendants, there are more than 100 members of the Class, and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

**ANSWER:**  The allegations of paragraph 11 of the First Amended Complaint set forth

conclusions of law to which no response is required.  To the extent that a response to paragraph

11 is deemed to be required, MetLife denies the same.

12.     Venue is appropriate because Plaintiff is a resident of the State of Illinois. Venue is also proper in this Court because Defendant systematically transacts business in the State of Illinois and the causes of action set forth in this Complaint, in part, arose in the State of Illinois. MetLife sold Plaintiff an individual long-term care insurance policy in the State of Illinois.

**ANSWER:**  MetLife does not contest venue.  MetLife admits, on information and belief, that

Plaintiff is a resident of Illinois.  MetLife admits that it sold a long-term care insurance policy to

Plaintiff in the State of Illinois.  MetLife admits that it routinely offers insurance coverage to

Illinois residents.  Except as expressly admitted herein, paragraph 12 of the First Amended

Complaint is denied.

### The Parties

13.     At all times mentioned herein, Plaintiff resided at 1930 Strenger Lane, Riverwoods, Illinois, 60015, and is the owner of a MetLife "LTC PREMIER" long-term care insurance policy number 04856-20065 ("MetLife Policy 04856-20065"). A copy of MetLife Policy 04856-20065 is attached hereto as "Exhibit B."

**ANSWER:**  MetLife admits, on information and belief, that Plaintiff resides at 1930 Strenger

Lane, Riverwoods, Illinois, 60015.  MetLife admits that Plaintiff is the owner of Policy 04856-

20065, a true and correct copy of which is attached to the First Amended Complaint as Exhibit

B (hereinafter, "Policy 04856-20065").

14.     At all times mentioned herein Defendant, MetLife, was a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York. MetLife, therefore, is a citizen of New York. MetLife is licensed to do business in the State of Illinois and regularly conducts business in Illinois.

**ANSWER:**  Admitted.

### Factual
### Allegations

15.     Plaintiff was 56 years old at the time she applied for and purchased MetLife Policy 04856-20065, with an effective date of coverage of September 1, 2004.

**ANSWER:**  Admitted upon information and belief.

16.     When Plaintiff purchased MetLife Policy 04856-20065, Plaintiff selected the "Reduced-Pay at 65 Option."

**ANSWER:**  MetLife admits that Plaintiff selected a flexible premium payment option for the premiums owed under Policy 04856-20065, which option is described as the "Reduced-Pay at 65" option in Policy 04856-20065.   Except as expressly admitted herein, MetLife denies paragraph 16.

17.     MetLife described the "Reduced-Pay at 65 Option" in the following manner:

> By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, **you pay half the amount of your pre-age 65 premiums thereafter.**

Exhibit A at 9 (emphasis added).

**ANSWER:**  MetLife admits that Paragraph 17 of the First Amended Complaint accurately quotes a portion of the brochure attached to the First Amended Complaint as Exhibit A, which is a document that speaks for itself.  Except to the extent expressly admitted herein, paragraph 17 of the First Amended Complaint is denied.

18.     The only information MetLife provided to Plaintiff and other policy holders regarding the terms and conditions of the "Reduced Pay at 65 Option" was contained within

5

marketing and promotional materials similar to and including the Long-Term Care ("LTC")
Facts" brochure (a copy of which is attached as "Exhibit A").

**ANSWER:** Denied.

19.    MetLife Policy 04856-20065 shows that Plaintiff selected the "Reduced-Pay at
65 Option." Exhibit B, "Schedule of Benefits." MetLife Policy 04856-20065 reflects that
Plaintiff's premiums would be cut in half once she turned 65 years old. Exhibit B "Schedule of
Benefits." MetLife Policy 04856-20065 contains no other statements regarding the "Reduced-
Pay at 65 Option."

**ANSWER:**  The allegations set forth in paragraph 19 of the First Amended Complaint

characterize the terms of Policy 04856-20065, which is a document that speaks for itself.  To

the extent the characterizations in paragraph 19 of the First Amended Complaint differ in any

respect from the terms and conditions of Policy 04856-20065, such characterizations are

denied.

20.    When Plaintiff purchased MetLife Policy 04856-20065, Plaintiff's "Total
Annual Premium with discounts applied" was $5,010.74, and her "Semi-Annual Premium
Amount" was $2,505.37. Exhibit B, "Schedule of Benefits."

**ANSWER:**  Paragraph 20 of the First Amended Complaint accurately restates the "Total

Annual Premium with discounts applied" and the "Semi-Annual Premium Amount" from the

"Schedule of Benefits" for Policy 04856-20065, attached to the First Amended Complaint as

Exhibit B.  Except as expressly admitted herein, paragraph 20 of the First Amended Complaint

is denied.

21.    Between when MetLife Policy 04856-20065 was first issued and the Policy
Anniversary on or after Plaintiff's 65th Birthday, Plaintiff paid an additional annual premium
of $1,453.12 in exchange for the benefit of the "Reduced-Pay at 65 Option."

**ANSWER:**  MetLife admits that Plaintiff paid a semi-annual premium of $3231.93 from the

time the Policy was issued on September 1, 2004 through August 31, 2010.  MetLife admits

that Plaintiff paid a semi-annual premium of $3,813.67 from September 1, 2010 through August

6

31, 2012. Except as expressly admitted herein, paragraph 21 of the First Amended Complaint

is denied.

22.  Immediately before Plaintiff turned 65 years old on May 14, 2012, her semi-annual premium for MetLife Policy 04856-20065 was $3,813.68.

**ANSWER:** MetLife admits that Plaintiff paid a semi-annual premium of $3,813.67 from

September 1, 2010 through August 31, 2012.

23.  Because Plaintiff selected the "Reduced-Pay at 65 Option," Plaintiff's semi-annual premium was reduced from $3,813.68 to $1,906.84 on September 1, 2012. (A copy of the Schedule of Benefits effective September 1, 2012 is attached hereto as "Exhibit C")

**ANSWER:** MetLife admits that Plaintiff's semi-annual premium was reduced from $3,813.67

to $1,906.84 on September 1, 2012.

24.  On March 1, 2015, MetLife increased Plaintiff's semi-annual premium 102% to $3,851.81—$38.13 more than Plaintiff's pre-age 65 semi-annual premiums. (A copy of the Schedule of Benefits effective September 1, 2015 is attached hereto as "Exhibit D")

**ANSWER:** MetLife admits that it increased Plaintiff's semi-annual premium to $3,851.80

effective March 1, 2015.  MetLife admits that Plaintiff's semi-annual premium in effect on

September 1, 2015 was $38.13 more than the semi-annual premium in effect on March 1, 2012.

Except as expressly admitted herein, paragraph 24 of the First Amended Complaint is denied.

25.  Plaintiff now pays $3,851.81 in semi-annual premiums, which is $1,944.97 more than the $1,906.84 semi-annual premium she was promised in exchange for purchasing the "Reduced-Pay at 65 Option." Plaintiff's annual premium is $3,889.94 more than what she was promised in exchange for purchasing the "Reduced-Pay at 65 Option."

**ANSWER:** Denied.

26.  Based on the terms and conditions of the "Reduced Pay at 65 Option", Plaintiff's annual premium should have remained permanently fixed at 50% of her pre-age 65 premium.

**ANSWER:** Denied.

## Class Allegations

7

27.     Plaintiff brings this action on behalf of herself, and all others similarly situated, pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons age 65 and older in the United States who purchased an individual long-term care insurance policy from MetLife (or a subsidiary or affiliate thereof) and selected the "Reduced-Pay at 65 Option" at any time during the period from January 1, 1986 to the present and have been subjected to a class-wide rate increase that increased their premiums above and beyond the promised 50% of their pre-age 65 premiums.

**ANSWER:**  MetLife admits only that Plaintiff seeks to bring an action on behalf of herself and

others purported similarly situated.  Except as expressly admitted herein, paragraph 27 of the

First Amended Complaint is denied.

28.     The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the United States. While only MetLife knows the exact number of class members, Plaintiff believes there are thousands of members in the Class based, in part, on the fact that MetLife has sold approximately 600,000 long term care insurance policies.

**ANSWER:**  Denied.

29.     Plaintiff's claims are typical of the claims of the other members of the Class she seeks to represent because Plaintiff and all class members purchased an individual long-term care insurance policy from MetLife and purchased the "Reduced-Pay at 65 Option."

**ANSWER:**  Denied.

30.     Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class.

**ANSWER:**  Denied.

31.     The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members.

**ANSWER:**  Denied.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens

upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

**ANSWER:** Denied.

33.     The interest of the members of the class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and/or formulaic, and the expense and burden of individual litigation might make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

**ANSWER:** Denied.

## COUNT I – Breach of Contract ("Reduced-Pay at 65 Option")

34.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 as if fully set forth herein.

**ANSWER:** MetLife hereby incorporates by reference each of its responses to the preceding paragraphs of the First Amended Complaint as if the same were set forth at length herein.

35.     Plaintiff brings this count on behalf of the Class.

**ANSWER:** MetLife admits only that Plaintiff seeks to bring an action on behalf of herself and others purported similarly situated.  Except as expressly admitted herein, paragraph 35 of the First Amended Complaint is denied.

36.     By purchasing MetLife Policy 04856-20065, Plaintiff entered into a contract with MetLife.

**ANSWER:** Admitted.

37.     By selecting the "Reduced-Pay at 65 Option," Plaintiff modified the terms and conditions of MetLife Policy 04856-20065, permanently fixing post-age 65 premiums at 50% of her pre-age 65 premiums.

**ANSWER:** MetLife denies all allegations set forth in paragraph 37 of the First Amended

Complaint.

38.     Under the specific terms of the "Reduced-Pay at 65 Option", Plaintiff agreed to pay more than the regular premium amount she would have otherwise paid each year up to September 1, 2012. In exchange, MetLife promised that Plaintiff would "pay half the amount of [her] pre-age 65 premiums thereafter" starting September 1, 2012.  (See Exhibit A.)

**ANSWER:** MetLife admits that, under the terms of Policy 04856-20065, Plaintiff agreed to

pay more premium before her policy anniversary at age 65 than she would have otherwise been

obligated to pay had she not selected the Reduced Pay at 65 Option.  Except as expressly

admitted herein, paragraph 38 of the First Amended Complaint is denied.

39.     MetLife breached its contract with Plaintiff by increasing Plaintiff's annual premiums 102% (to an amount greater than Plaintiff's pre-age 65 annual premiums) in March 2015, when Plaintiff was 67 years old.

**ANSWER:** Denied.

40.     As a result of MetLife's breach, Plaintiff was forced to pay an additional $3,889.94 in increased annual premiums. Therefore, Plaintiff has been damaged and continues to incur damages.

**ANSWER:** Denied.

**COUNT II – Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Reduced-Pay at 65 Option")**

41.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 as if fully set forth herein.

**ANSWER:** MetLife hereby incorporates by reference each of its responses to the preceding

paragraphs of the First Amended Complaint as if the same were set forth at length herein.

42.     Plaintiff brings this count on behalf of the Class.

**ANSWER:** MetLife admits only that Plaintiff seeks to bring an action on behalf of herself and others purported similarly situated. Except as expressly admitted herein, paragraph 42 of the First Amended Complaint is denied.

43. MetLife violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §501/1 *et seq.* ("ICFA"), and other similar state consumer fraud acts, in one or more of the following respects:

**ANSWER:** Denied.

44. When marketing the "Reduced-Pay at 65 Option," MetLife represented to Plaintiff that if Plaintiff paid more than the regular premium amount Plaintiff would otherwise pay each year up to the Policy Anniversary on or after Plaintiff's 65th birthday, Plaintiff would "**pay half the amount of [Plaintiff's] pre-age 65 premiums thereafter**." Exhibit A at 9 (emphasis added).

**ANSWER:** MetLife is without knowledge sufficient to form a belief as to whether or when Plaintiff received the brochure attached to the First Amended Complaint as Exhibit A and, therefore, MetLife denies that Plaintiff received the brochure prior to purchasing Policy 04856-20065. The remaining allegations set forth in paragraph 44 of the First Amended Complaint characterize the terms of the brochure attached to the First Amended Complaint as Exhibit A, which is a document that speaks for itself. To the extent the characterizations in paragraph 44 of the First Amended Complaint differ in any respect from the language in the brochure, such characterizations are denied.

45. The foregoing representation was deceptive because MetLife knew it could only and would only increase premiums on a class-wide basis.

**ANSWER:** MetLife admits that it knew it could only increase premium rates for Policy 04856-20065 on a class-wide basis in accordance with the terms of Policy 04856-20065 and Illinois law. Except as expressly admitted herein, paragraph 45 of the First Amended Complaint is denied.

46.     MetLife did not define the "class" for Plaintiff and other purchasers of long term care insurance.

**ANSWER:**  The allegations set forth in paragraph 46 of the First Amended Complaint

characterize the terms of Policy 04856-20065, which is a document that speaks for itself.  To

the extent the characterizations in paragraph 46 of the First Amended Complaint differ in any

respect from the terms and conditions of Policy 04856-20065, such characterizations are

denied.  Excepted as expressly admitted herein, paragraph 46 of the First Amended Complaint

is denied.

47.     Unbeknownst to Plaintiff and other purchasers of the "Reduced Pay at 65 Option" the "class" subjected to future, "class-wide" premium increases was broadly defined to include policies both with and without the "Reduced Pay at 65 Option."

**ANSWER:**  MetLife is without information sufficient to form a belief as to the allegations in

paragraph 47 of the First Amended Complaint concerning Plaintiff's and other policyholders'

knowledge or belief related to the intent of the Policy and, therefore, all such allegations are

denied.  The remaining allegations in paragraph 47 of the First Amended Complaint

characterize the terms of Policy 04856-20065, which is a document that speaks for itself.  To

the extent the characterizations in paragraph 47 of the First Amended Complaint differ in any

respect from the terms and conditions of Policy 04856-20065, such characterizations are

denied.

48.     Thus, if MetLife had to increase premiums after Plaintiff turned 65 years old, MetLife would be unable to deliver on the "Reduced-Pay at 65 Option's" promise to "**pay half the amount of [Plaintiff's] pre-age 65 premiums <u>thereafter</u>**."  Exhibit A at 9 (emphasis added).

**ANSWER:**  Denied.

49.     MetLife intended that Plaintiff rely on the foregoing deceptive statement when deciding to purchase an individual long-term care insurance policy and/or the "Reduced-Pay at 65 Option."

**ANSWER:** Denied.

50.     MetLife made the foregoing deceptive statement in the conduct of trade or commerce—namely the sale of individual long-term care insurance policies and/or the "Reduced-Pay at 65 Option."

**ANSWER:** The allegations of paragraph 50 of the First Amended Complaint concerning whether the alleged statement was made in the conduct of trade or commerce is a conclusion of law to which no response is required. To the extent that a response to such allegations in paragraph 50 of the First Amended Complaint is deemed to be required, MetLife denies the same. Any remaining allegations in paragraph 50 of the First Amended Complaint are denied.

51.     MetLife intended that the statements and representations made in the marketing materials it produced, published and distributed related to Long Term Care Insurance be relied upon by purchasers of MetLife's policies, riders and payment options.

**ANSWER:** Denied.

52.     Plaintiff relied on the foregoing deceptive statement when deciding to purchase the "Reduced-Pay at 65 Option."

**ANSWER:** Denied.

53.     Plaintiff would not have purchased the "Reduced-Pay at 65 Option" and/or MetLife Policy 04856-20065 had she known the payment option did not permanently fix her premiums after she turned 65 years old.

**ANSWER:** MetLife admits that Plaintiff purchased Policy 04856-20065 and that Plaintiff selected the Reduced-Pay at 65 Option when she completed her application to purchase Policy 04856-20065. MetLife is without information sufficient to form a belief as to the allegation in paragraph 53 that Plaintiff, as she now claims, would not have purchased Policy 04856-20065 had she known the payment option did not permanently fix her premiums after she turned 65 years old and, therefore, such allegation is denied. Except as expressly admitted herein, paragraph 53 of the First Amended Complaint is denied.

13

54.     As a direct and proximate result of the foregoing deceptive statement, Plaintiff has incurred damages, and will continue to incur damages, in the form of additional premiums paid in excess of the promised post-age 65 premium.

**ANSWER:** Denied.

55.     MetLife's misrepresentations regarding the benefits provided by the "Reduced-Pay at 65 Option" violated Illinois public policy—including standards of conduct set out in Ill. Admin. Code tit. 50, § 2012.122(b)(4), as well as Illinois common law doctrines governing insurance policies and breach of contract.

**ANSWER:** Denied. By way of further response, MetLife denies that it made any

misrepresentations to Plaintiff or any putative class member.

56.     MetLife's misrepresentations regarding the benefits provided by the "Reduced-Pay at 65 Option" were "immoral, unethical, oppressive, or unscrupulous" because it forced Plaintiff to do one of the following: (1) pay a premium more than two times greater than the premium Plaintiff originally agreed to pay; (2) reduce the coverage for which she had previously contracted; (3) or cancel her coverage altogether.

**ANSWER:** Denied. By way of further response, MetLife denies that it made any

misrepresentations to Plaintiff or any putative class member.

57.     If Plaintiff canceled her coverage, she would not have been able to obtain individual long-term care insurance from another insurer at the price MetLife charged. Thus, to maintain the long-term care insurance coverage MetLife promised her, Plaintiff had no choice but to pay the increased premiums starting March 1, 2015.

**ANSWER:** MetLife admits that Plaintiff was required to pay the premium owed to maintain

her coverage without modification.   MetLife is without information sufficient to form a belief

as to the remaining allegations in paragraph 57 of the First Amended Complaint and, therefore,

all such allegations are denied.

58.     Plaintiff suffered substantial injury because she was forced to pay a premium more than two times greater than the premium Plaintiff initially agreed to pay.

**ANSWER:** Denied.

## COUNT III – Fraud ("Reduced-Pay at 65 Option")

59.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 as if fully set forth herein.

**ANSWER:**  MetLife hereby incorporates by reference each of its responses to the preceding paragraphs of the First Amended Complaint as if the same were set forth at length herein.

60.     Plaintiff brings this count on behalf of the Class.

**ANSWER:**  MetLife admits only that Plaintiff seeks to bring an action on behalf of herself and others purported similarly situated.  Except as expressly admitted herein, paragraph 60 of the First Amended Complaint is denied.

61.     The "Reduced-Pay at 65 Option" stated the following:

**Reduced Pay at 65 Option:** By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, you pay half the amount of your pre-age 65 premiums **thereafter**.

Exhibit A at 9 (emphasis added**).**

**ANSWER:**   MetLife admits that paragraph 61 of the First Amended Complaint accurately quotes a portion of the brochure attached to the First Amended Complaint as Exhibit A, which is a document that speaks for itself.  Except as expressly admitted herein, paragraph 61 of the First Amended Complaint is denied.

62.     The language MetLife used to market the "Reduced Pay at 65 Option" promised or guaranteed a post-65 premium that was locked-in at 50% of the pre-65 premium.

**ANSWER:**  Denied.

63.     At the time it offered and sold Plaintiff the "Reduced Pay at 65 Option" MetLife knew that if a class-wide premium increase was implemented after Plaintiff turned 65 years old, it would be unable to fulfill its promise to lock-in Plaintiff's premium to 50% of her pre-65 premium, making "you pay half the amount of your pre-age 65 premiums thereafter" a false statement of material fact.

**ANSWER:**  Denied.

64.     MetLife intended that Plaintiff rely on the foregoing misrepresentation when deciding to purchase MetLife Policy 04856-20065 and/or the "Reduced-Pay at 65 Option."

**ANSWER:**  MetLife admits that Plaintiff purchased Policy 04856-20065 and that Plaintiff selected the Reduced-Pay at 65 Option when she purchased Policy 04856-20065.  Except as expressly admitted herein, paragraph 64 of the First Amended Complaint is denied.

65.     Plaintiff relied on the foregoing misrepresentation and/or omission when deciding to purchase MetLife Policy 04856-20065 and/or the "Reduced-Pay at 65 Option."

**ANSWER:**  MetLife admits that Plaintiff purchased Policy 04856-20065 and that Plaintiff selected the Reduced-Pay at 65 Option when she purchased Policy 04856-20065.  Except as expressly admitted herein, paragraph 65 of the First Amended Complaint is denied.

66.     Plaintiff would not have purchased the "Reduced-Pay at 65 Option" had she known her policy premiums were subject to increase after she turned 65.

**ANSWER:**  MetLife admits that Plaintiff purchased Policy 04856-20065 and that Plaintiff selected the Reduced-Pay at 65 Option when she completed her application to purchase Policy 04856-20065.  MetLife is without information sufficient to form a belief as to the allegation in paragraph 66 that Plaintiff, as she now claims, would not have purchased Policy 04856-20065 had she known her policy premiums were subject to increase after she turned 65 and, therefore, such allegation is denied.  Except as expressly admitted herein, paragraph 66 of the First Amended Complaint is denied.

67.     As a direct result of the foregoing misrepresentation and/or omission, Plaintiff suffered damages in the form of premiums in excess of 50% of her pre-65 premiums.

**ANSWER:**  Denied.

### COUNT IV – Fraudulent Concealment ("Reduced-Pay at 65 Option")

68.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 67 as if fully set forth herein.

16

**ANSWER:** MetLife hereby incorporates by reference each of its responses to the preceding paragraphs of the First Amended Complaint as if the same were set forth at length herein.

69.     Plaintiff brings this count on behalf of the Class.

**ANSWER:** MetLife admits only that Plaintiff seeks to bring an action on behalf of herself and others purported similarly situated.  Except as expressly admitted herein, paragraph 69 of the First Amended Complaint is denied.

70.     The "Reduced-Pay at 65 Option" stated the following:

> **Reduced Pay at 65 Option:** By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, you pay half the amount of your pre-age 65 premiums **thereafter**.

Exhibit A at 9 (emphasis added)**.**

**ANSWER:** MetLife admits that paragraph 70 of the First Amended Complaint accurately quotes a portion of the brochure attached to the First Amended Complaint as Exhibit A, which is a document that speaks for itself.  Except as expressly admitted herein, paragraph 70 of the First Amended Complaint is denied.

71.     Thus MetLife affirmatively represented to Plaintiff that her pre-age 65 premiums would be cut in half after Plaintiff turned 65 years old.

**ANSWER:** MetLife admits that MetLife represented to Plaintiff that her pre-age 65 premiums would be reduced by half at her policy anniversary after she turned 65 years old.  Except as expressly admitted herein, paragraph 71 of the First Amended Complaint is denied.

72.     At the time it offered and sold Plaintiff the "Reduced Pay at 65 Option," MetLife knew that if a class-wide premium increase was implemented after Plaintiff turned 65 years old, it would be unable to fulfill its promise to lock-in Plaintiff's premium to 50% of her pre-65 premium.

**ANSWER:** Denied.

73. MetLife's failure to disclose that if a class-wide premium increase was implemented after Plaintiff turned 65 years old, MetLife would be unable to fulfill its promise to lock-in Plaintiff's premium to 50% of her pre-65 premium constituted a fraudulent omission.

**ANSWER:** Denied.

74. By omitting the aforementioned information, MetLife intended to induce a false belief in Plaintiff that Plaintiff's premiums would be permanently cut in half once Plaintiff turned 65 years old.

**ANSWER:** Denied.

75. MetLife failed to define "class" as it relates to a class-wide premium increase in MetLife Policy 04856-20065.

**ANSWER:** MetLife admits that "class" is not a specifically defined term in Policy 04856-20065. Except as expressly admitted herein, paragraph 75 of the First Amended Complaint is denied.

76. Furthermore, Illinois law offers no standard definitions of "class" as it relates to a class-wide premium increase.

**ANSWER:** The allegations in paragraph 76 of the First Amended Complaint purport to set forth conclusions of law to which no response is required. To the extent that paragraph 76 contains any averment of fact such that a response is deemed required, MetLife denies the same.

77. Thus, Plaintiff could not have discovered that she was potentially subject to premium increases once she turned 65 years old through reasonable inquiry or inspection.

**ANSWER:** Denied.

78. Plaintiff would not have purchased the "Reduced-Pay at 65 Option" had she known her policy premiums were subject to increase after she turned 65.

**ANSWER:** MetLife admits that Plaintiff purchased Policy 04856-20065 and that Plaintiff selected the Reduced-Pay at 65 Option when she purchased Policy 04856-20065. MetLife is without information sufficient to form a belief as to the remaining allegations in paragraph 78 of the First Amended Complaint and, therefore, all such allegations are denied.

79.     As a direct result of the foregoing misrepresentation and/or omission, Plaintiff suffered damages in the form of premiums in excess of 50% of her pre-65 premiums.

**ANSWER:** Denied.

### Request for Relief

MetLife denies that Plaintiff, or any putative class, is entitled to the judgment or any of the relief sought in the "WHEREFORE" clause of the First Amended Complaint or any other relief that may be requested elsewhere in the First Amended Complaint.

### GENERAL DENIAL

MetLife denies each and every allegation, matter, and thing contained in the First Amended Complaint, except as admitted, qualified, or otherwise stated above and demands strict proof thereof.

### AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), and without assuming any burden of proof or persuasion that would otherwise rest on Plaintiffs, MetLife asserts the following affirmative defenses.  MetLife reserves the right to amend or to supplement the following affirmative defenses, including without limitation, the right to amend as information is gathered through discovery.

### FIRST DEFENSE
(Failure to State a Cause of Action)

The First Amended Complaint, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against MetLife upon which relief can be granted.

## SECOND DEFENSE
(Filed Rate Doctrine)

The amounts of premium charged, and the terms and conditions imposed with respect to the insurance that is the subject of the First Amended Complaint, were filed with and accepted by the applicable governmental authorities and are per se reasonable and unassailable in judicial proceedings brought by Plaintiffs.  Further, MetLife is required by law to charge only the rate that was filed with the applicable governmental authorities and courts are prohibited from awarding a plaintiff damages based on the difference between a filed rate and an allegedly lawful rate.

## THIRD DEFENSE
(Statutes of Limitations)

The applicable statutes of limitations bar one or more causes of action alleged in the First Amended Complaint.

## FOURTH DEFENSE
(Laches)

Plaintiff unreasonably  delayed in taking action in connection with the alleged claims, causing substantial prejudice to MetLife, and such claims therefore are barred pursuant to the doctrine of laches.

## FIFTH DEFENSE
(Doctrines of Primary and/or Exclusive Jurisdiction)

The causes of action advanced in the First Amended Complaint by Plaintiff, insofar as they relate to alleged conduct that is subject to the regulatory jurisdiction of one or more regulatory or administrative agencies or bodies, should be, or must be, reviewed by those

regulatory or administrative agencies or bodies under the doctrines of primary and/or exclusive jurisdiction.

**SIXTH DEFENSE**
(Regulatory Approval)

The purported claim made by Plaintiff is barred to the extent that state and federal agencies having jurisdiction over the business practices at issue have approved those practices.

**SEVENTH DEFENSE**
(Abstention Doctrine)

This Court should abstain from adjudicating the claims made by Plaintiff and members of the putative class because federal adjudication would unduly intrude upon complex and specialized state regulatory issues and state administrative processes.

**EIGHTH DEFENSE**
(Punitive Damages Unconstitutional)

To the extent that any claim in this action seeks exemplary or punitive damages, any such relief would violate statutory limitations on damages, and/or MetLife's rights under the Constitution of the United States of America and the Constitution of the State of Illinois, including, but not limited to, the rights of Defendants to: (1) procedural due process under the Constitution of the State of Illinois and the Fourteenth Amendment of the United States Constitution; (2) protection from excessive fines as provided in the Eight Amendment of the United States Constitution; and (3) substantive due process provided in Article 1, Section 2 of the Constitution of the State of Illinois and under the Fifth and Fourteenth Amendment of the United States Constitution.

## NINTH DEFENSE
(Adequate remedies at law)

To the extent the First Amended Complaint prays for equitable relief, such claims are barred because Plaintiff, and the persons on whose behalf Plaintiff purports to bring this action, have adequate remedies at law.

## TENTH DEFENSE
(Waiver)

The claims asserted in the First Amended Complaint are barred, in whole or in part, by the doctrine of waiver.

## ELEVENTH DEFENSE
(Estoppel)

The claims asserted in the First Amended Complaint are barred, in whole or in part, by the doctrine of estoppel.

## TWELFTH DEFENSE
(Release, Payment, and/or the Doctrine of Accord and Satisfaction)

The claims asserted in the First Amended Complaint are barred, in whole or in part, by release, payment, and/or the doctrine of accord and satisfaction.

## THIRTEENTH DEFENSE
(Ripeness)

This action is barred in whole or in part on grounds of lack of ripeness.

## FOURTEENTH DEFENSE
(Good Faith)

This action is barred because MetLife at all times acted in good faith.

## FIFTEENTH DEFENSE
### (No Certifiable Class)

Plaintiff's claims are not proper for class certification under Federal Rule of Civil

Procedure 23, because Plaintiff cannot satisfy the requirements set forth in Federal Rule of Civil

Procedure 23. MetLife reserves all available defenses under Rule 23 and applicable case law.

## SIXTEENTH DEFENSE
### (Improper Class Definition)

Plaintiff's proposed class definition is improper and overbroad, and includes putative

class members who have no claims against MetLife.

WHEREFORE, Defendant, Metropolitan Life Insurance Company, demands

judgment in its favor dismissing the First Amended Complaint, and awarding it costs and such

other relief as the Court deems just and proper.

Respectfully submitted,

Metropolitan Life Insurance Company

Dated: April 18, 2018        By: */s/* Daniel J. Delaney
                              One of its Attorneys

                              Daniel J. Delaney
                              Drinker Biddle & Reath LLP
                              191 North Wacker Drive, Ste. 3700
                              Chicago, IL 60606-1698
                              (312) 569-1416
                              Daniel.Delaney@dbr.com

                              Sheldon Eisenberg
                              Drinker Biddle & Reath LLP
                              1800 Century Park East
                              Ste. 1500
                              Los Angeles, CA 90067
                              (310) 203-4035
                              Sheldon.Eisenberg@dbr.com

Stephen A. Serfass
Drinker Biddle & Reath LLP
One Logan Square
Ste. 2000
Philadelphia, PA 19103
(215) 988-1186
Stephen.Serfass@dbr.com

---

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2018, I electronically filed the foregoing Answer and Affirmative Defenses with the Clerk of the Court for the United States District Court for the Northern District Of Illinois, Eastern Division, by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  April 18, 2018                                        By: */s/*  Daniel J. Delaney