# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARGERY NEWMAN, and all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) METROPOLITAN LIFE INSURANCE CO., ) ) Defendant. ) | No. 16 C 3530<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION & ORDER

Plaintiff Margery Newman, on behalf of all others similarly situated, has sued defendant Metropolitan Life Insurance Co. ("MetLife") alleging that MetLife breached its long-term care insurance policy with Newman and committed fraud when it raised Newman's premiums at age 67 despite selling her a "Reduced-Pay at 65" option designed to alleviate concerns about premium increases. On March 22, 2018, the Seventh Circuit reversed and remanded this Court's dismissal of Newman's lawsuit, holding that Newman had adequately pleaded her claims. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992 (7th Cir. 2018), *as amended on petition for rehearing* (Mar. 22, 2018).

Shortly before the Seventh Circuit's remand order, on March 12, 2018, this Court held in *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864 (N.D. Ill. 2018), that *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), prevents federal courts from exercising specific

(as opposed to general) personal jurisdiction over class members whose claims do not relate to defendants' contacts with the forum state. None of the parties disputes that this Court lacks general personal jurisdiction over MetLife. And none of the parties disputes that unless this Court were to deviate from its interpretation of *Bristol-Myers* in *Practice Management*, this Court lacks specific personal jurisdiction over the majority of Newman's proposed nationwide class absent a waiver by MetLife of its personal jurisdiction defense.

On May 3, 2018, in the wake of *Bristol-Myers* and *Practice Management*, Linda Morris, Kevin Morris, and Marsha Donaldson ("the Morris plaintiffs") filed a nearly identical lawsuit to this one against MetLife in the Southern District of New York. Unlike this Court, the Southern District of New York has general personal jurisdiction over MetLife, a corporation organized in New York with its principal place of business in New York. *See* R. 78-1 ¶ 1; *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) ("The 'paradigm' forums in which a corporate defendant is 'at home'" for purposes of general personal jurisdiction "are the corporation's place of incorporation and its principal place of business"). The Southern District of New York has since stayed the Morris plaintiffs' case pending final judgment in this case. *Morris v. MetLife*, No. 18-cv-3977, Dkt. 23 (June 21, 2018). On May 23, 2018, at the parties' request, the Court referred this case to Magistrate Judge Finnegan to conduct a settlement conference. R. 75.

Currently before the Court is the Morris plaintiffs' motion to intervene in this case pursuant to Federal Rule of Civil Procedure 24(b) for purposes of participating

in the settlement process (R. 77). Newman opposes the Morris plaintiffs' motion, arguing that the parties and absent class members would be better off without the Morris plaintiffs' involvement. R. 88. MetLife filed a short response to the Morris plaintiffs' motion stating that it "defers to the Court's judgment," but "does not believe the *Morris* Plaintiff[s'] intervention is necessary or would be productive given the duplicative nature of the *Morris* Plaintiffs' claims." R. 87 at 1. For the reasons explained below, the Court grants the Morris plaintiffs' motion.

## STANDARD

Permissive intervention is governed by Federal Rule of Civil Procedure 24(b), which provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." "All that is required for permissive intervention . . . is that the applicant have a claim or defense in common with a claim or defense in the suit. If this condition is satisfied, . . . the judge must then decide as a matter of discretion whether intervention should be allowed." *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 101 F.3d 503, 509 (7th Cir. 1996); *see also Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) ("Permissive intervention under Rule 24(b) is wholly discretionary.").

## ANALYSIS

There is no dispute that the Morris plaintiffs' claims "share[ ] with [this case] a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In their action pending in the Southern District of New York, the Morris plaintiffs assert

substantially similar claims against MetLife related to MetLife's "Reduced-Pay at 65" payment structure for long-term care policies. *See* R. 78-1 (Morris plaintiffs' complaint). Indeed, Newman acknowledges that the Morris plaintiffs are absent members of the contemplated settlement classes. *See* R. 88 at 10, 12; *see also, e.g.*, *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 589 (N.D. Ill. 1998) ("an absent class member would have little difficulty showing . . . a common question of law or fact with the class" for purposes of permissive intervention).

The only remaining question is whether this Court in its discretion finds the Morris plaintiffs' motion "timely" (Fed. R. Civ. P. 24(b)(1)) and intervention appropriate. *See Solid Waste*, 101 F.3d at 509 (if the intervening party has a common claim, "the judge must then decide as a matter of discretion whether intervention should be allowed"). Courts "consider the following factors to determine whether a [permissive intervention] motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Sokaogon Chippewa*, 214 F.3d at 949.

### A. Length of Time

With respect to the first factor, Newman says the Morris plaintiffs should have known about their interest in the case when they first learned about a pending rate increase with MetLife (in 2014 for Donaldson and in July 2017 for Linda and Kevin Morris (*see* R. 78-1 ¶¶ 38, 54)). But as one of Newman's own cases makes

4

clear, "the timeliness rules are more forgiving where the lawsuit is a class action and the intervenor is a putative or actual class member; unnamed class members may reasonably presume, at least until events prove the presumption inaccurate, that their interests are being adequately represented by the class representatives." *Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 729 (N.D. Ill. 2017). Timeliness of motions for intervention by unnamed class members is therefore measured from the time when "class members suspect that the representative is not acting in their best interest"—*e.g.*, when "learning of the terms of a (potentially inadequate) settlement." *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000).

The Morris plaintiffs argue they had no reason to suspect any conflict on the part of Newman until this Court's docket entry reflected that the parties were engaged in settlement discussions on May 23, 2018. R. 75. This docket entry triggered the Morris plaintiffs' concern that because MetLife's personal jurisdiction defense under *Bristol-Myers* and *Practice Management* gives it additional bargaining power in Newman's case, MetLife and Newman would strike a lopsided agreement that would adversely affect the interests of the Morris plaintiffs as absent class members. One week later, on May 31, 2018, the Morris plaintiffs moved to intervene. R. 77. For the reasons discussed in more detail below, the Court finds the Morris plaintiffs' bargaining-power argument persuasive. The Court therefore also finds that the Morris plaintiffs filed their motion promptly after they

5

reasonably suspected that Newman may not be acting in their best interest. *See Crawford*, 201 F.3d at 880.

### B. Prejudice and Unusual Circumstances

The Morris plaintiffs' principal argument in support of intervention is that both they and other absent class members (*i.e.*, both original and intervening parties) will be prejudiced in the ongoing settlement negotiations based on the unusual circumstance resulting from *Bristol-Myers* and *Practice Management*. *See Sokaogon Chippewa*, 214 F.3d at 949 (timeliness factors include prejudice to the original parties, prejudice to the intervening parties, and unusual circumstances). Namely, the Morris plaintiffs say that Newman's negotiating power in the settlement discussions is reduced because Newman is now subject to a personal jurisdictional defense that, unless waived by MetLife, likely prevents certification of a nationwide class in this district. They also say that this jurisdictional defense creates a significant conflict between the interests of Newman (and her counsel) and the interests of absent class members.

"In the class action context, absent (or unnamed) class members generally can intervene if the class representatives are no longer adequately representing their interests." *In re Discovery Zone Sec. Litig.*, 181 F.R.D. at 589. As explained above, none of the parties disputes that this Court lacks general personal jurisdiction over MetLife, or that absent a change in this Court's interpretation of *Bristol-Myers*, this Court also lacks specific personal jurisdiction over the majority of Newman's proposed nationwide class unless MetLife waives that defense. *See Ins.*

*Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (a personal jurisdiction defense can be waived). Because the Morris plaintiffs are not subject to the same personal jurisdiction defense in their case in the Southern District of New York, where the court has general jurisdiction over MetLife, they argue that they have greater bargaining power and do not have the same conflict-of-interest as Newman.

In response, Newman points out that in one of MetLife's briefs in the Southern District of New York, MetLife conceded that it "has already agreed to waive any jurisdictional defenses in *Newman* for purposes of seeking and effecting a nationwide settlement." R. 88-3 at 10. But as the Morris plaintiffs note, this waiver by its stated terms applies only to settlement discussions—not to all future litigation. MetLife therefore still has leverage to hold out for the most favorable settlement terms, knowing that if Newman walks away from the table, MetLife still could assert its personal jurisdiction defense in this case. And Newman (and her counsel) may be tempted to accept less favorable settlement terms to achieve a nationwide settlement in exchange for MetLife's waiver of its jurisdictional defense.

The Seventh Circuit has identified the perils of a "reverse auction" situation "whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hopes that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). Although the Court does not take fault with Newman's representation of the putative class to

7

date—in fact, Newman's representation has been highly effective, including reversing a dismissal order—in light of the unique circumstances surrounding MetLife's personal jurisdiction defense, permitting the Morris plaintiffs to intervene in this case will ensure that the absent class members are well-represented and have the appropriate amount of leverage in negotiating a nationwide settlement.

In addition to the bargaining-power issue, the Morris plaintiffs point to another potential problem with Newman's representation of the class in settlement discussions. They note that MetLife offered the "Reduced-Pay at 65" payment structure in at least two different forms: (1) a premium payment option; and (2) a formal rider. Whereas Newman, Linda Morris, and Kevin Morris all selected a premium payment option (R. 73 ¶¶ 19-20; R. 78-1 ¶¶ 24-25), Donaldson (the third Morris plaintiff) had a formal rider in her policy. *Id.* ¶¶ 26-27.

Newman claims this is a distinction without a difference because Newman and MetLife have agreed to settlement class definitions that include all purchasers of "Reduced-Pay at 65" payment structures, whether labeled a premium payment option or a rider. Notwithstanding this representation, the Court agrees with the Morris plaintiffs that because Donaldson's policy contained a rider, intervention might "enhance or strengthen the representation of the class," ensuring that the interests of rider-holders like Donaldson are fully protected to the extent they are distinct. *See, e.g.*, *In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig.*, 2002 WL 31371945, at *4 (D. Minn. Oct. 7, 2002) (intervention under Rule 24(b) "is allowable in the context of class actions to enhance or strengthen the representation

8

of the class"). Indeed, although the Court need not decide the question at this stage, it is unclear whether Newman's selection of a "Reduced-Pay at 65" option provides her with standing to adequately represent class members whose policies incorporated the "Reduced-Pay at 65" payment structure through riders. Although less significant than the bargaining-power issue, this is another factor weighing in favor of intervention.

Newman makes several additional arguments about the prejudices that may be suffered and the unusual circumstances at issue. But none of these arguments changes this Court's conclusion that intervention is timely and appropriate here.

*First*, Newman argues that allowing the Morris plaintiffs to intervene "will inevitably delay and likely disrupt settlement negotiations," which will prejudice the original parties. R. 88 at 8. It is true that "[a] principal reason for 'the timeliness requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal.'" *Kostovetsky*, 242 F. Supp. 3d at 731 (quoting *Sokaogon Chippewa*, 214 F.3d at 949). But this is not a case like *Kostovetsky* where intervention "would effectively reopen a dismissed case and necessitate burdensome additional discovery." *Id*. To the contrary, the Morris plaintiffs seek intervention for the limited purpose of participating in settlement discussions and ensuring that the class is fully protected as this case nears a possible conclusion. Indeed, the Morris plaintiffs make the valid point that it may have been the filing of their lawsuit—a lawsuit in which MetLife does not have a personal jurisdiction defense to

9

nationwide class claims—that brought MetLife to the negotiating table in this case. It therefore only seems fair to give the Morris plaintiffs a seat at the table.

The Third Circuit in *Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995), declined to find intervention four years into the case untimely based on the argument that the intervenors' "legitimate interest" might "deep six any possible settlement." *Id.* at 370. The Third Circuit rejected this argument as a prejudice not "attributable to any time delay." *Id.* Likewise here, the fact that the Morris plaintiffs' intervention might impact settlement discussions based on their legitimate interests is not a prejudice "attributable to any time delay." *See id.*

*Second*, Newman says that denying the Morris plaintiffs' motion to intervene will not prejudice them because they can always opt out of any class settlement and pursue their own individual lawsuits, or object to the settlement agreement at the preliminary and final approval stages. Although these options may protect the interests of the Morris plaintiffs themselves, it does not protect absent class members from a bad settlement. And as the Morris plaintiffs note, it is more efficient to negotiate a fair settlement in the first place than to try to defeat a bad settlement at the preliminary and final approval stages.

*Third*, Newman raises the question of whether the three Morris plaintiffs would be adequate class representatives, explaining that neither Linda nor Kevin Morris has turned 65 (meaning they may not yet have damages), and that Donaldson's claim may be time-barred. R. 88 at 10-11. But this is not the stage of

the case where it is appropriate for the Court to make merits determinations about potential defenses MetLife might have against potential class representatives. At this stage, the question is merely whether the Morris plaintiffs' intervention motion for purposes of participating in settlement discussions is timely and should be allowed.

*Fourth*, Newman claims the Morris plaintiffs' counsel is simply acting on a profiteering motive to share in whatever attorneys' fees might be contemplated in a nationwide class settlement. The Court recognizes that the Morris plaintiffs' counsel has acted opportunistically in the wake of a sea change in the law. But that opportunism does not outweigh the legitimate conflict-of-interest points that the Morris plaintiffs raise.

\* \* \*

On balance, the *Sokaogon Chippewa* factors weigh in favor of finding permissive intervention by Morris plaintiffs under Rule 24(b) timely and appropriate. The Court therefore grants the Morris plaintiffs' motion to intervene and participate in settlement negotiations.

## CONCLUSION

For the foregoing reasons, the Court grants the Morris plaintiffs' motion to intervene (R. 77).

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: July 3, 2018